JAYNE E. SCHMIDT ET AL., APPELLEES, v. RICHMAN GORD-
MAN, INC., A CORPORATION, ET AL., APPELLANTS.

215 N. W. 2d 105

Filed February 21, 1974. No. 39065.

Thomas J. Walsh and Michael R. O'Malley of Walsh, Walentine & Miles, for appellants.

Arthur D. O'Leary of McGrath, North, Dwyer, O'Leary & Martin, and Steven J. Lustgarten, for appellees.

Heard before WHITE, C. J., BOSLAUGH, and McCOWN, JJ., and TESAR and HAMILTON, District Judges.

TESAR, District Judge.

These are two tort actions brought by plaintiffs, Schmidt and Clifton, who are sisters, and, as the same facts are involved in both cases, the actions were consolidated for trial.

These actions arose out of an incident which occurred in the store of defendant Richman Gordman, Inc., at 120th and West Center Road in Omaha, Nebraska, on November 24, 1971. The plaintiffs came to the store on said date and shopped. The plaintiffs were stopped as they left the store by the defendant Gladys Horan, who is employed as a security guard by the defendant Richman Gordman, Inc. The plaintiffs were taken to the office in the store, held for approximately 45 minutes, and ultimately were taken to the Omaha police station by members of the Omaha police department, who were called by the defendants and who were advised that the plaintiffs were observed shoplifting in the store. Plaintiffs were held in jail for a period of 3½ to 4 hours and they were "mugged" and fingerprinted. They

were charged with petit larceny and were released on bail at about 10 o'clock p.m. that evening. Subsequently the plaintiffs appeared in the municipal court of the City of Omaha to answer the charge of petit larceny, and the cases were dismissed.

Suit was instituted by both plaintiffs and each alleged the same three causes of action: The first, for slander; the second, for false arrest and imprisonment; and the third, for malicious prosecution. Trial was held and at the close of plaintiffs' evidence the trial court sustained defendants' motion in each case for a directed verdict on the cause of action for slander, but permitted the cases to proceed as to the other two causes of action. The jury found in favor of each plaintiff in the sum of $4,500 on their cause of action for false arrest and imprisonment, and in favor of each plaintiff in the sum of $10,500 on their cause of action for malicious prosecution.

Briefly, the evidence indicates as follows: Kathleen A. Clifton, age 21, and her sister, Jayne E. Schmidt, age 19, along with their two brothers and a sister, all of whom ranged in age from 5 to 10 years, went at about 4 p.m. into the defendants' store for the purpose of buying birthday presents for their father. They went to the men's department and picked out a shirt priced at $7.99 and then they selected a sweater-vest, and were going to buy a tie to go with the shirt and vest. They went to the tie department and plaintiff Clifton put the vest over the shirt, which shirt was on a hanger. They attempted to find a tie to match, but didn't find one, so they selected a pair of gloves. They shopped around the store for a while and then went to the cashier to check out their purchases. While the plaintiffs were making their selection of a tie they were observed by the defendant Gladys Horan, the security guard, who concluded that plaintiffs were attempting to shoplift the shirt. Miss Horan warned the

checkout girl to give the plaintiffs the opportunity of paying for the shirt. When the plaintiffs went through the checkout stand the checkout girl, one Miss Ellefson, age 21, who had worked as a cashier for a period of about 1 month, asked if the vest and shirt on the hanger was a "one-piece or two-piece" item. Both plaintiffs testified that they answered it was "two pieces." Miss Ellefson testified that she did not see more than one price tag on the items, but she couldn't remember whether or not she separated the items when they were brought to the counter. The plaintiffs both testified positively that the cashier separated the items and took the vest off the shirt from the hanger, and that the price tags were plainly visible on the items. The cashier then sacked the items and stapled the cash register receipt showing payment for the purchases onto the bag, which sealed or closed the bag, and the plaintiffs left the store. As soon as the plaintiffs left the checkout stand, Miss Ellefson signaled Miss Horan, with a prearranged signal, who then stopped the plaintiffs in the vestibule and escorted them to the office, where they were charged with attempting to procure a shirt without making payment therefor. When the plaintiffs left the checkout stand they did not count their change from the $20 bill that had been tendered for payment of the articles because of some commotion caused by one of their younger brothers.

Miss Ellefson, the checkout cashier, although she knew that the shirt and vest were separately priced items, at no time made any attempt to eliminate any possible misunderstanding which may have existed as to whether the items were a one-piece or two-piece item. Richman Gordman had a price code system to prevent pilfering two one-piece items as if they were a set. We feel it is important to recite Miss Ellefson's cross-examination verbatim: "Q. Would you tell me, if you know, how Richman-Gordman, codes the price tag? A. If I re-

member right, for a two-piece item they have 'two-piece' on the tag, and I think it is a green tag. Q. So they are coded? A. Yes. * * * Q. Do you know whether these items were coded? A. No, I don't. I don't know. * * * Q. One of the girls, when you asked, said it was two pieces? A. Yes. Q. And most of the time the items were coded to indicate whether or not it was a set or two pieces or two items or two outfits? A. Yes, they are."

When the plaintiffs were accosted by the defendant Horan, in the vestibule, she showed them her badge and credentials and asked that they accompany her to the office. Miss Horan was about 20 years of age with no training in security work except her employment for the defendant store for a period of slightly over 1 year. In the office Miss Horan asked permission to examine their purchases enclosed in the bag. They answered in the affirmative. What transpired then is reflected in the testimony of plaintiff Jayne Schmidt: "Q. When you got to the office, Jayne, what happened? A. Well, the girl asked us if she could look in our sack, and we said yes, and she told us that we had not paid for the shirt, and Kathy told her we had just gone through the checkout stand and paid for everything. She showed us the register ticket and said it wasn't rung up. And we said that wasn't our fault that it wasn't rung up, that we planned to pay for it and we would gladly pay for it. And she said no, we were planning to get out without paying for the shirt. And then she called some guy, and some guy came up, and he told us that we were trying to get away without paying for the shirt, and we tried to explain it to him, and he wouldn't listen to us at all."

The facts in evidence conclusively show that Miss Horan apprehended and detained these plaintiffs at the defendant store. She testified that she personally made the determination not to let the plaintiffs leave the

Richman Gordman Store. Plaintiffs testified that they felt they could not leave the room where they were confined, and in this connection, Horan testified that if the plaintiffs had started to run she would have chased them. Officer Pensyl testified he received the call, "to pick up a shoplifter" at the store. The call was made by Miss Horan. Officer Pensyl testified numerous times that when he arrived at the store the plaintiffs were in custody of the defendants and were under arrest. He made out his report based on information furnished by said security personnel. Thereafter he took the security officer's report and as "conveying officer" took the plaintiffs to the city jail for confinement.

Defendants contend that the trial court erred in defining what constitutes an "arrest" in its instruction No. 11. This assignment of error was cited and argued in their brief. The court gave an almost verbatim definition of "arrest" as defined in 5 Am. Jur. 2d, Arrest, § 1, p. 695, which properly defines what constitutes an arrest, and said instruction, given by a very able trial judge, was correct.

Defendants contend that one who merely states to a police officer what he knows of a supposed offense, without making a charge or an arrest, is not liable for false arrest. The facts here do not fit the cases cited to support their contention. In Herbrick v. Samardick & Co., 169 Neb. 833, 101 N. W. 2d 488, this court said: "False imprisonment consists in the unlawful restraint against his will of an individual's personal liberty. * * * Any intentional conduct, chargeable to the defendant, that results in placing of a person in a position where he cannot exercise his will in going where he may lawfully go, may constitute false imprisonment. * * * Where there is a conflict in testimony in an action for false imprisonment, credibility of witnesses and weight of evidence are questions for the jury." See, also,

Robertson v. Safe Way Stores, Inc., 130 Neb. 82, 264 N. W. 153.

Defendants also place reliance on the statutes of the State of Nebraska, to-wit: Sections 29-402.01 and 29-402.03, R. R. S. 1943. Suffice it to say that the trial judge properly instructed the jury on the statutes. The jury found that the defendants detained plaintiffs without probable cause, in an unreasonable manner, for an unreasonable length of time.

Proceeding now to plaintiffs' cause of action for malicious prosecution, this court has said: "In a malicious prosecution case, the necessary elements for the plaintiff to establish are: (1) The commencement or prosecution of the proceeding against him; (2) its legal causation by the present defendant; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage, conforming to legal standards resulting to plaintiff." Kersenbrock v. Security State Bank of Osmond, 120 Neb. 561, 234 N. W. 419. All the above elements must coalesce, and if any of these elements are lacking the result is fatal to the action. In White v. Chicago, B.. & Q. R. R., 417 F. 2d 941, Judge Lay said: "The defendant relies upon the Nebraska common law rule that a person who supplies information to prosecuting authorities is not liable for his action as long as any ensuing prosecution is left entirely to the official's discretion. (Citing cases.) * * * *Its application, however, is not without limitations.* Where the informant knowingly gives *false or misleading information* or in any wise directs or counsels officials in such a way so as to actively persuade and induce the officer's decision, then the informant may still be held liable (Citing cases.) * * * In view of the verdict, the plaintiff is entitled to have the evidence viewed in the light most favorable to his cause and be

given the benefit of all reasonable inferences arising from the facts. (Citing cases.)"

Here the defendant Horan made out a conclusionary report. The report was given to the prosecutor for determination of what action was to be taken. It is apparent that the defendant Horan, while acting for and on behalf of Richman Gordman, and while in the course and scope of her employment, set the machinery of the law in motion. It need not be shown that the defendant Horan actively participated in getting the complaint filed, or for that matter, signed the complaint if she, on her own motion, gave information or made complaint to the officers of law in such a manner as that, in the regular and ordinary course of events, a complaint must issue, then this is sufficient to warrant the jury in finding her the real prosecutor. Her conduct and the overall circumstances surrounding this case could properly be viewed by the jury in terms of persuasion and inducement to prosecute.

Here, the defendants failed to give the city prosecutor *all* information and particularly the plaintiffs' version. Mr. Bucchino, the city prosecutor, testified that he made his decision to prosecute upon the report furnished by the defendants and he stated that the complaints would not have been filed if there had been no call from Richman Gordman.

On the question of probable cause, defendants place reliance upon Brumbaugh v. Frontier Refining Co., 173 Neb. 375, 113 N. W. 2d 497. The court there held that in an action for malicious prosecution, where there is sufficient undisputed evidence to show probable cause, the trial court should direct a verdict for the defendant. We have no quarrel with that rule, but in the case at bar there was not sufficient undisputed evidence to show probable cause. On the disputed facts which were properly presented to the jury by the court's instructions, the fact finders found against the defendants by their ver-

dict, and thus found a want of probable cause to exist. See 52 Am. Jur. 2d, Malicious Prosecution, § 52, p. 218. See, also, Annotation, 87 A. L. R. 2d 183.

Malice must be shown, as well as want of probable cause, but it may be deducible from the facts and circumstances surrounding the transaction and is inferable from the absence of probable cause. The law never presumes malice, although in a proper case its presence may be inferred from want of probable cause. This inference is one of fact which may be drawn only by the jury, but is one which it is not required to draw. The jury under proper circumstances herein, drew the conclusion that the acts were done maliciously by the defendants and with that finding we have no quarrel. As this court in Hackler v. Miller, on rehearing, 79 Neb. 209, 114 N. W. 274, approved an instruction stating "in law, the want of probable cause does not of itself show malice, but the jury are at liberty to infer malice therefrom as a conclusion of fact, if from all the evidence in the case they deem such an inference justifiable." Here the triers of fact felt it justifiable. There can be no question that damages have been sustained by the plaintiffs in conformity to legal standards, but as to whether said verdicts were excessive we will consider under defendant's next assignment of error.

We now consider defendants' assignment of error that the verdicts were excessive and were the result of passion, prejudice, or mistake. The law relating to review of amount of jury verdicts is well settled in this state. In Fridley v. Brush, 161 Neb. 318, 73 N. W. 2d 376, this court said: "A verdict may be set aside as excessive only when it is so clearly exhorbitant as to indicate that it was a result of passion, prejudice, or mistake, or that it is clear that the jury disregarded the evidence or controlling rules of law." It likewise said: "In an action for damages, where the law furnishes no legal rule for measuring them, the amount to be awarded rests largely in

the sound discretion of the jury, and courts are reluctant to interfere with a verdict so rendered." See, also, Paddack v. Patrick, 163 Neb. 355, 79 N. W. 2d 701; Sutton v. Inland Constr. Co., 144 Neb. 721, 14 N. W. 2d 387; Peacock v. J. L. Brandeis & Son, 157 Neb. 514, 60 N. W. 2d 643.

Defendants assert that these plaintiffs did not suffer any damage. When one is unlawfully restrained of his personal liberty, arrested and paraded through a store under guard of a police officer, confined in the local jail for 3½ to 4 hours, fingerprinted and "mugged" for permanent FBI records, charged with a criminal offense, and compelled to retain counsel for their defense, damage is obvious and serious. Mental anguish and distress, humiliation and disgrace are virtually presumed.

We affirm the verdicts in these causes with one condition. The verdict in each case for malicious prosecution should be reduced to $10,000 which is the amount of the prayer in each case. The jury verdicts in each case, were in the amount of $10,500. No motion having been made by the plaintiffs to increase their prayer on these causes, we are confronted by the rule of law announced in Gable v. Pathfinder Irr. Dist., 159 Neb. 778, 68 N. W. 2d 500, wherein this court said: "The office of the ad damnum in a pleading is to fix the amount beyond which a party may not recover on the trial of the action." Again, in Davis v. Hall, 70 Neb. 678, 97 N. W. 1023, the court said: "Where a verdict exceeds the amount claimed in his pleadings, by the party gaining it, it is error to enter judgment for the full amount found."

This court can, at its option, consider plain error not specified in appellant's brief. § 25-1919, R. R. S. 1943; Hartman v. Hartmann, 150 Neb. 565, 35 N. W. 482.

For the reasons stated, the judgments rendered herein are, on both causes of action, affirmed, on condition that each plaintiff, within 20 days from the date this opinion is filed, file in the office of the Clerk of the Dis-

trict Court for Douglas County, Nebraska, a remittitur in the amount of $500 on their third cause of action (for malicious prosecution) and in the event of such remission, judgments are affirmed for the sum of $10,000 on the third cause of action in each case, and in default thereof, the judgments on said third cause of action shall be reversed, and that cause remanded for further proceedings according to law.

AFFIRMED ON CONDITION.