SHERMAN HUSKINSON, APPELLEE, v. LAMBERT H. VANDER-HEIDEN ET AL., APPELLANTS.

251 N. W. 2d 144

Filed March 2, 1977. No. 40631.

Richard D. Sievers of Marti, Dalton, Bruckner, O'Gara & Keating, for appellants.

George H. Moyer, Jr., of Moyer, Moyer & Egley, for appellee.

Heard before SPENCER, BOSLAUGH, and CLINTON, JJ., and HAMILTON and WINDRUM, District Judges.

HAMILTON, District Judge.

This action was commenced by appellee, Sherman Huskinson, for false arrest and imprisonment against the defendant, Lambert H. Vanderheiden, and his employer, Flobert Industries, Incorporated. The trial judge ruled that appellee's arrest was unlawful as a matter of law and so instructed the jury which returned a verdict against the appellants in the sum of $5,000.

The case arose from a contractual dispute. Flobert Industries, Incorporated, of Elgin, Nebraska, and A & K Railroad Materials, Inc., of Clearfield, Utah, entered into a contract on January 30, 1973. This contract required Flobert Industries to sell A & K a certain amount of relay rails salvaged from a discontinued railroad. The contract specified for a $20,000 downpayment, which was made, and "balance to be paid before material is removed from premises."

The procedure followed was that A & K employees or agents would load material from a stock pile site near Elgin, Nebraska, then take the load to Elgin Mills to be weighed. The cost of the load would be deducted from the $20,000 downpayment. This procedure was followed until appellee, a truck driver for A & K, arrived for the 17th load. The record indicates that load 17 used up the $20,000 downpayment and left a balance owing of $725.04.

There is a dispute in the testimony concerning the circumstances surrounding load 17. The appellee denies having any conversation with Mr. Vanderheiden

in the afternoon when he weighed his load, however Vanderheiden testified that he spoke with appellee after load 17 was weighed and told him not to leave until there were funds to pay for the load, and that appellee said he would stay in town. There is a certain amount of confusion and contradiction in the testimony of Vanderheiden regarding the instructions to appellee concerning the movement of load 17. All of said testimony is denied by appellee.

The evidence reflects that appellee stayed in town at the local motel and departed somewhere near 10 a.m. the following morning toward the direction of Schuyler, Nebraska. The appellee was stopped near Schuyler at about noon by the Nebraska Highway Patrol and taken to the sheriff's office in Schuyler, where, according to the evidence, he was relieved of his belongings and was under arrest from 12:31 p.m. to 3:42 p.m.

The appellee was stopped and arrested as a result of a radio broadcast advising that the appellee had left Elgin without paying for a load of rails. Vanderheiden acknowledges calling the Nebraska Highway Patrol stating that a load of iron had left town without payment and that he wanted the man apprehended, giving a license number and a description of the truck.

The trial judge's ruling on the motion for a directed verdict on the lawfulness of the arrest was based upon the fact that the evidence established that no felony had been committed. The trial judge concluded that the evidence supported the fact that title had passed to appellee's employer, and even accepting Vanderheiden's testimony as true, there was no crime of grand larceny committed.

The principal contention of appellants is that the trial judge erred in ruling as a matter of law that appellee's arrest was unlawful.

It is a well-established principal of law that where different minds may draw different conclusions or inferences, or where there is a conflict in the evidence,

the matter at issue must be submitted to the jury. Sacher v. Petersen, 184 Neb. 305, 167 N. W. 2d 384 (1969).

It is also true that a motion for a directed verdict admits for the purpose of decision the truth of all material and relevant evidence on behalf of the party against whom the motion is directed, and he is entitled to have every controverted fact found in his favor, and have the benefit of fair inferences deducible from the evidence. Jarosh v. Van Meter, 171 Neb. 61, 105 N. W. 2d 531 (1960).

Where the facts are conceded, undisputed, or are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question, as a matter of law, rather than submit it to a jury for determination. Thomas v. Owens, 169 Neb. 369, 99 N. W. 2d 605; Wylie v. Czapla, 168 Neb. 646, 97 N. W. 2d 255.

A false imprisonment consists in the unlawful restraint against his will of an individual's personal liberty and any intentional conduct that results in the placing of a person in a position where he cannot exercise his will in going where he may lawfully go. Schmidt v. Richman Gordman, Inc., 191 Neb. 345, 215 N. W. 2d 105; Cimino v. Rosen, 193 Neb. 162, 225 N. W. 2d 567. A private citizen who by affirmative direction, persuasion, or request procures an unlawful arrest and detention of another is liable for false imprisonment. Jensen v. Barnett, 178 Neb. 429, 134 N. W. 2d 53.

In order to attach liability to appellants it was necessary to prove the unlawfulness of the arrest as provided for in section 29-402, R. R. S. 1943, which permits arrest by persons other than police officers. The arrest by a law enforcement officer without a warrant pursuant to and instigated by a private citizen must have a basis in fact, establishing that a petit larceny or a felony has been committed, and there is reasonable

ground to believe the person arrested guilty of such offense. § 29-402, R. R. S. 1943.

Since the evidence is undisputed that the value of load 17 exceeded the jurisdictional limits of petit larceny, the question presented to the trial judge was whether the crime of grand larceny had been committed.

In order to commit a larceny as defined in section 28-506, R. R. S. 1943, the person must steal goods or chattels "the property of another." The trial judge in finding that title had passed to the appellee's employer negates the larceny if it finds support in the evidence.

The contract for the sale of the material provides:

"The buyer, A & K Railroad Materials, Inc., will select from a designated storage inventory the above materials. The above-mentioned material will be loaded on buyer's equipment at no cost to seller, and will remit on the basis of $40.00 per net ton, plus a $2.00 per net ton transportation allowance on all the mentioned material. The above material will be loaded and scaled at Elgin Mills. All material will be loaded from the agreed stockpile within a reasonable length of time and the area restored to a condition satisfactory to the seller after completion of agreement.

"Seller hereby acknowledges an advance payment of $20,000.00, balance to be paid before material is removed from the premises."

It is true that the Uniform Commercial Code controls. Section 2-401, U. C. C., provides in part: "(1) * * * title to goods passes from the seller to buyer in any manner and on any conditions explicitly agreed on by the parties.

"(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods * * *."

The contract does not explicitly refer to the passage of title, therefore title passes under section 2-401, U.

C. C., subsection (2), upon the physical delivery of the goods.

The undisputed evidence reflects that appellee was permitted to load the iron from the designated stock pile, and accepting appellants' version as true was permitted to leave the Elgin scale conditionally.

The physical delivery of the iron was completed and the seller completed performance when the goods were loaded and scaled, and permission granted to leave the premises. The attempt to unilaterally amend the contract with regard to payment was a nullity and at most amounted to an attempt to retain a security interest in the goods. Ownership of the goods having passed to A & K, the appellee having come into possession of the goods lawfully had every right to leave town not having committed any crime.

The undisputed and conceded facts establish that no felony had been committed, therefore it is unnecessary to discuss the reasonableness of appellants' actions.

Appellants assert that the trial judge erred in not submitting the defense of probable cause pursuant to section 29-402.01, R. R. S. 1943, which provides: "A peace officer, a merchant, or a merchant's employee who has probable cause for believing that goods held for sale by the merchant have been unlawfully taken by a person and that he can recover them by taking the person into custody may, for the purpose of attempting to effect such recovery, take the person into custody and detain him in a reasonable manner for a reasonable length of time. Such taking into custody and detention by a peace officer, merchant, or merchant's employee shall not render such peace officer, merchant, or merchant's employee criminally or civilly liable for slander, libel, false arrest, false imprisonment, or unlawful detention."

The fallacy of appellants' argument lies in the fact that ownership of the iron had already passed from the appellants to A & K, making the statute inapplicable,

and for the further reason that section 29-402.01, R. R. S. 1943, by its plain terms is a statute enacted for the protection of merchants from shoplifters. The appellants were not merchants with goods for sale as contemplated by the statute, nor did the statute apply where ownership of the goods was not with the parties claiming protection under the statute.

Appellants assert that the verdict is excessive requiring a new trial or remittitur. "A verdict may be set aside as excessive only when it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, or mistake, or that it is clear that the jury disregarded the evidence or controlling rules of law." Schmidt v. Richman Gordman, Inc., 191 Neb. 345, 215 N. W. 2d 105. See, also, Fridley v. Brush, 161 Neb. 318, 73 N. W. 2d 376.

There is evidence that appellee suffered a loss of $455, the value of working time or earnings lost. The evidence with respect to physical discomfort and mental anguish is not overwhelming but does reflect that appellee suffered in both respects. The record on the other hand is devoid of any evidence that would tend to inflame the passions or prejudices of the jury. There is no absolute or accurate method to determine mental anguish since the basis for it rests within the mind where it is conceived. In awarding damages for physical discomfort and mental anguish a jury must rely on the totality of the circumstances surrounding the incident, the credibility of the evidence and witnesses, and the weight to be given to all these factors rests in the sound discretion of the jury. This court is reluctant to interfere with a jury verdict where the law provides no accurate measurement.

The assignments of error are without merit and the judgment of the District Court is affirmed.

AFFIRMED.