FRANCES A. JOHNSON, APPELLANT, V.
FIRST NATIONAL BANK & TRUST COMPANY OF LINCOLN,
A NATIONAL BANKING ASSOCIATION, APPELLEE.

300 N.W.2d 10

Filed December 19, 1980. No. 43020.

John McArthur and A. James McArthur for appellant.

James M. Bausch of Cline, Williams, Wright, Johnson & Oldfather for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and COLWELL, District Judge.

COLWELL, District Judge.

This is a civil suit to recover damages on two counts: (1) False arrest and imprisonment, and (2) Malicious

prosecution. At the close of plaintiff's evidence, defendant moved for a directed verdict or, in the alternative, to withdraw the jury and dismiss plaintiff's petition. The motion was granted and the petition was dismissed. Plaintiff appeals and we affirm.

We summarize the direct evidence in a manner most favorable to the plaintiff. In May 1977, Anna L. Protsman, age 63, opened a joint checking account with her daughter, Frances A. Johnson, the plaintiff herein, in the First National Bank & Trust Company of Lincoln. Protsman closed this account in March 1978, and opened a new account in the same bank, substituting her brother, Archer Smith, as joint owner. Shortly thereafter, Protsman was hospitalized for 7 weeks. While in the hospital, plaintiff states, her mother told her that she wished to close out this bank account. She asked plaintiff to call the bank's drive-in facility, which she did, speaking to manager Larry Volland, who refused to give plaintiff any information. Plaintiff handed the telephone to her mother, who determined her bank balance was $701.60, and she told Volland that she wished to close the account. Plaintiff's mother then signed one of her printed check forms bearing the printed names of the joint owners and gave it to plaintiff, who filled in the amount of $701.60, payable "To close account." Plaintiff took the check to the defendant bank and presented it to Volland, who recalled the telephone conversation and noted on the check "cash. OK to close" and initialed it. Plaintiff presented the check for payment and received $125 in cash and a cashier's check for $576.60 payable to Anna L. Protsman. Plaintiff completed a change of address form for her mother, substituting her own address at Beatrice, Nebraska. The final statement of account was sent to plaintiff rather than to her mother. Plaintiff took the cashier's check to her mother, who endorsed it and told plaintiff to take it home with her, which she did. According to plaintiff, most of the cash was left with her mother. Protsman was discharged from

the hospital in late May and spent the next 3 months in nursing homes. During this time, plaintiff claims that Protsman suffered from hallucinations and her memory was impaired.

In August 1978, Archer Smith appeared at defendant bank and inquired about the joint account, stating that he had not been receiving the bank statements as usual. Being informed that the account was closed, Smith advised two bank employees, Ray Sellmeyer and JoAnn Case, that Protsman had not asked plaintiff to close the account, and that Protsman had not signed the check. Based on this complaint from a joint owner of an account, Sellmeyer obtained a photocopy of the check, a surveillance photograph taken of plaintiff when she cashed the check, and a forgery affidavit form. Thereafter, he interviewed Protsman at Tabitha Home, Lincoln, Nebraska. The affidavit was on a printed form regularly used by the bank for completion by depositors in forgery complaint situations. Protsman denied having signed the check and identified the surveillance photograph as being of her daughter. She signed the affidavit which, in substance, recites that she had examined the check, that the signature was not hers, that she did not either authorize or consent to the making of such signature, and that it was a forgery. Sellmeyer returned the affidavit form to the bank where it was later notarized by Case. Sellmeyer telephoned Detective Marlin Rauscher of the Lincoln Police Department and informed him of Smith's complaint, the interview with Protsman, and the contents of the affidavit form. Later, Sellmeyer gave Rauscher a copy of the check, the surveillance photo, and the completed affidavit form; he also advised Rauscher concerning Volland's notation on the check. Protsman's signature card was available at the bank, but it was not given to Rauscher and he did not ask for it, although he knew that the same was available.

Rauscher did not contact Protsman; however, he did interview Archer Smith, who advised that Protsman conducted most of her own business affairs. Volland had informed Rauscher that at the time he interviewed Protsman, she appeared to be competent and understood the statements contained in the affidavit. Rauscher made arrangements with Tabitha Home to be advised when plaintiff next visited her mother, which she did on August 12, 1978. She was then arrested without a warrant by Officer Gregory Sims and confined in the city jail. Rauscher interviewed plaintiff on August 14th at the jail and she denied the charges and denied receiving all the money. Rauscher furnished Deputy County Attorney James Luers with an investigative report which included the interview and contents of the forgery affidavit form. Based on this report, Luers made the decision to commence criminal prosecution proceedings against plaintiff and filed a complaint against her for the crime of possession of a forged instrument. Later, Luers and Rauscher interviewed Protsman, who again stated that she did not sign the check. Thereafter, an expert examination of the check determined that the signature on the check was genuine and prosecution proceedings were dismissed on Luers' motion. The bank made restitution to Protsman for the amount of the check.

"Where the facts are conceded, undisputed, or are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question, as a matter of law, rather than submit it to a jury for determination." *Huskinson v. Vanderheiden,* 197 Neb. 739, 742, 251 N.W.2d 144, 146 (1977). See, also, *Hoefer v. Marinan,* 195 Neb. 477, 238 N.W.2d 900 (1976). However, "[w]hen the evidence is conflicting, the question whether the officer had reasonable ground for believing that the person arrested had committed a felony is for the jury under proper instructions." *Wilson v. Gutschenritter,* 185 Neb. 311,

175 N.W.2d 282 (1970) (syllabus of the court). We conclude, as the trial court did, that the question of reasonable cause for arrest was a jury question.

"A private citizen who by *affirmative direction, persuasion, or request procures an unlawful arrest* and detention of another is liable for false imprisonment. If an informer merely states to a peace officer his knowledge of a supposed offense and the officer makes the arrest entirely upon his own judgment and discretion, the informer is not liable. *If an informer knowingly gives to an officer false information which* is a determining factor in his decision to make an arrest, the informer is liable." *Jensen v. Barnett*, 178 Neb. 429, 134 N.W.2d 53 (1965) (emphasis supplied) (syllabus of the court).

Did defendant procure plaintiff's arrest? Defendant, through its several employees, provided the police with information including the original complaint made by Smith, a photograph of plaintiff, a copy of the check in question, and a written statement executed by plaintiff's mother that a forgery had been committed by plaintiff. This was in keeping with standard procedures followed by the bank in such situations. Defendant did not originate any further contact with the police and its agents did nothing more than give a report of information to the proper governmental agency having authority in such matters. The defendant did not procure plaintiff's arrest.

Did defendant knowingly give the police false information which was a determining factor in the decision to arrest plaintiff? Plaintiff urges that such was done when defendant failed to compare Protsman's signature with her known signature on the signature card in the possession of defendant; failed to furnish the signature card to Rauscher; and failed to inform Rauscher of the conversations Volland had with Protsman in which Protsman authorized the closing of the account and the cashing of the check. Plaintiff urges that the above-cited reasons plus the

irregular completion of the jurat on the affidavit all amounted to the giving of false information. The defendant did not have a duty to further investigate the complaint made by Smith, under the circumstances here. Forgery is a serious crime; investigation and prosecution processes are for persons and agencies other than the defendant.

Plaintiff's first cause of action was properly dismissed.

"'In a malicious prosecution case, the necessary elements for the plaintiff to establish are: (1) The commencement or prosecution of the proceeding against him; (2) its legal causation by the present defendant; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage, conforming to legal standards resulting to plaintiff.' [Citation omitted.] All the above elements must coalesce, and if any of these elements are lacking the result is fatal to the action. . . . *'Its application, however, is not without limitations.* Where the informant knowingly gives *false or misleading information* or in any wise directs or counsels officials in such a way so as to actively persuade and induce the officer's decision, then the informant may still be held liable . . . .'" *Schmidt v. Richman Gordman, Inc.,* 191 Neb. 345, 351, 215 N.W.2d 105, 109 (1974) (emphasis in original); *Cimino v. Rosen,* 193 Neb. 162, 225 N.W.2d 567 (1975).

The three elements of malicious prosecution that we consider are: (1) Legal causation by the defendant; (2) The absence of probable cause; and (3) The presence of malice.

As to legal causation, plaintiff urges that defendant knowingly gave false or misleading information, citing *Schmidt* as authority. We do not agree. In *Schmidt,* it was held that the informant knowingly gave false or misleading information by its "conclusionary report" and by failing to give the prosecutor the "plain-

tiffs' version" of the complaint. Here, defendant furnished the police with the facts and circumstances of the alleged offense as known to it and there was no contact by defendant with plaintiff. No false information was knowingly given to the county attorney's office, and Deputy County Attorney Luers made the decision to file a complaint against plaintiff based upon Rauscher's investigative report and Protsman's affidavit. Luers had no contact with anyone from the bank prior to filing the complaint.

The record is clear that there was sufficient evidence possessed by Luers that would lead him to the conclusion that the signature on the check was false (forged), that plaintiff possessed it and cashed it, and that there was probable cause for the filing of the complaint.

Plaintiff urges that malice can be inferred from defendant's acts and omissions. *Schmidt v. Richman Gordman, supra.* While wanton and reckless disregard for the rights of others may imply malice, 54 C.J.S. *Malicious Prosecution* § 42 (1948), there is no evidence here that reasonably meets that proof. Defendant here made a routine report to the police concerning a complaint received from a former joint depositor to the effect that the bank had honored a forged check. This information, together with Protsman's statement, was furnished to the police for investigation and disposition. We do not view the evidence as supporting any reasonable conclusion that defendant was guilty of malice. Plaintiff's second cause of action was also properly dismissed.

From the evidence, reasonable minds can draw but one conclusion: that plaintiff had failed to sustain her burden of proof and that, as a matter of law, her petition should have been dismissed.

AFFIRMED.