Stephen C. LYNCH and Patricia R. Lynch, Plaintiffs,

v.

OMAHA WORLD–HERALD COMPANY, a Delaware Corporation, and W. James Johnson, Defendants.

No. 8:02 CV 360.

United States District Court, D. Nebraska.

Jan. 27, 2004.

Matthew F. Heffron, Fitzgerald, Schorr Law Firm, Omaha, NE, for Plaintiff.

Elizabeth M. Callaghan, Michael C. Cox, Koley, Jessen Law Firm, Omaha, NE, for Defendant.

Laurie A. Kelly, Assistant United States Attorney–Omaha, Omaha, NE, for Interested Party.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

### *Introduction*

This matter is before the court on defendants' motion for summary judgment, Filing No. 58. Plaintiffs have sued the defendants alleging malicious prosecution, intentional infliction of emotional distress, and loss of consortium. Defendants deny these allegations and have moved the court to dismiss the lawsuit. I have carefully reviewed the record, the briefs in support and in opposition, and the indices of evidence, and I conclude that the motion for summary judgment should be denied.

### *Standard of Review*

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(C); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir.1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Therefore, if the defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159–60, 90 S.Ct. 1598; *Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.*, 825 F.2d 167, 173 (8th Cir.1987).

Once the defendant meets its initial burden of showing there is no genuine issue of material fact, the plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed.R.Civ.P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir.1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### *Facts*

Stephen Lynch contends that he and his wife, who live in New York, periodically reviewed the North Platte Telegraph (hereinafter NPT) newspaper, as his wife, plaintiff Patricia Lynch, previously lived in North Platte and liked to keep up on the news there. On or about March 3, 2000, Steven Lynch pulled up the Web page of the NPT and inserted sexual material about his wife being wanted for sex crimes, using her maiden name, Patricia Allberry. Mr. Lynch contends that he had no idea he was entering into the Web page of the newspaper. He believed that the changes were made on his personal screen. Mr. Lynch states that he did this for a joke for his wife's birthday, believing only she would see it.

The Omaha World–Herald had just recently purchased the NPT on March 1, 2000, and had thereafter installed a new firewall. However, the day that Mr. Lynch accessed the NPT, he alleges that he unknowingly gained direct access to the

Web page without an identification number or a password. He later found out that, according to a statement allegedly made to Patricia Lynch by Larry Shearer, NPT's publisher, that the security system was down. Mr. Shearer denies making that statement. The changes made by Mr. Lynch appeared on the NPT Web site for approximately ninety minutes, at which time Alice Mora, the Webmaster for NPT, caused the Web page to be returned to its original information.

Within a short period of time, Larry Shearer, the North Platte Telegraph publisher, determined that Mr. Lynch had changed the Web page, and Mr. Lynch stated that such a change was an accident. Prior to obtaining this knowledge, however, the Omaha World–Herald believed that hacking was involved and notified the Federal Bureau of Investigation (hereinafter FBI), and in particular Special Agent Peter Sakaris, and asked the FBI to look into the matter. A memo was sent by CEO John Gottschalk on March 3, 2000, stating that "Confidentially ... we ... are looking for someone to hang." Pl.Ex. 1. Agent Sakaris met with Omaha World–Herald personnel to determine whether evidence existed to prosecute Mr. Lynch. It appears that the first interview took place on March 7, 2000, with Jim Johnson, a Systems Administrator from the Omaha World–Herald, who reported directly to Mr. Gottschalk. Johnson told Agent Sakaris that they had determined that Mr. Lynch had changed the Web page. On March 13, 2000, a meeting was held with Omaha World–Herald employees, the United States Attorney, and the FBI. At that meeting Johnson told those in attendance that Mr. Lynch had used a legitimate path to the Web page. Jim Johnson then wrote a letter, at Sakari's apparent request, formally asking for an investigation by the Department of Justice. Again, on April 27, 2000, Jim Johnson met with Sakaris for an update on the case.

Thereafter, the FBI issued subpoenas and a search warrant and interviewed Mr. Lynch on May 31, 2000. Shortly after that time, the FBI asked Christopher Meinders, former Information Security Specialists for the Omaha World–Herald, who reported to Jim Johnson, to interpret the North Platte Telegraph's firewall logs. On August 22, 2000, Meinders told Sakaris that the action appeared to be deliberate and could not have been arbitrary. Meinders gave a summary of the firewalls to Sakaris. Sakaris evidently relied on Meinders's opinion that this was a deliberate act, as late as August 2000. *See* Ex. 16, 21, Dep. of Johnson. Thereafter, Sakaris requested an itemization of damages related to the Lynch incident of March 3, 2000. On November 22, 2000, Johnson sent an itemization to Sakaris in the amount of $5,500.00. Dep. of Sakaris, Ex. 10. To bring an action against the plaintiffs by the United States under the federal statute in the criminal prosecution of Mr. Lynch, the injured party, the Omaha World–Herald, must have $5,000.00 in damages. Johnson contends that he did not know the legal requirements for damages in this type of a case required $5,000.00, but plaintiffs argue the Omaha World–Herald employees did in fact know of this requirement.

A grand jury proceeding was conducted, and on December 14, 2000, Stephen Lynch was indicted. He was charged with one count of intentionally accessing a protected computer without authorization and recklessly causing damage as a result thereof in violation of 18 U.S.C. § 1030(a). A criminal case was filed and ultimately dismissed in August of 2001. Thereafter, plaintiffs filed this lawsuit.

### Discussion

#### A. Malicious Prosecution

■ In order to establish a case of malicious prosecution, a plaintiff must show: (1) the commencement or prosecu-

tion of the proceeding against him; (2) its legal causation by the present defendant; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such a proceeding; (5) the presence of malice therein; (6) damage, conforming to legal standards resulting to plaintiff. *Johnson v. First National Bank and Trust Co.*, 207 Neb. 521, 300 N.W.2d 10, 14 (1980); *Holmes v. Crossroads Joint Venture*, 262 Neb. 98, 629 N.W.2d 511, 526 (2001). If a person knowingly gives false or misleading information which persuades authorities to take certain actions, then that person can be sued for malicious prosecution. *Holmes*, 629 N.W.2d at 526–27.

Plaintiffs argue that defendants provided the prosecution with all evidence in the case, withheld crucial evidence in the case, and provided false and misleading evidence as set forth below. Thus, defendants were the cause of the filing of the criminal prosecution, argue plaintiffs. Elements one and three are not in dispute. I shall, therefore, address those elements upon which there is a dispute.

### 1. Probable Cause

■ If probable cause exists to institute the original proceeding, it is a bar to an action for malicious prosecution. *Brumbaugh v. Frontier Refining Co.*, 173 Neb. 375, 113 N.W.2d 497, 503 (1962). The facts and circumstances must support a reasonable basis for suspicion of criminal activity. *Cimino v. Rosen*, 193 Neb. 162, 225 N.W.2d 567, 569–70 (1975). Defendants contend that at the time the entry occurred, they had every reason to believe they were dealing with a hacker who had intentionally tapped into their Web page. The indictment by the grand jury, argues defendants, shows probable cause existed. The fact that the grand jury indicted Mr. Lynch is not dispositive, argues plaintiffs, as the information provided to the FBI and prosecution came directly from the defendants. The defendants cannot hide behind the indictment, given their culpability. *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir.1988).

Plaintiffs argue that early in March the defendants learned that Mr. Lynch is a financial auditor with the State of New York. Further, he is a captain in the National Guard, the father of two children and happily married. Defendants, argue plaintiffs, also knew that the Lynch family was widely respected in North Platte, and the wife of the previous owner of the NPT called the NPT on behalf of the plaintiffs. Plaintiffs say that the defendants did not reveal any of this information to the FBI.

Further, the defendants, argue the plaintiffs, told the FBI that the changes to the NPT Web page could not have been accidental and that Mr. Lynch tried to upload changes. The defendants also told the FBI that there were numerous attempts to "break in" by Steven Lynch. Dep. of Sakaris, 70:3–6; 73:11–20, Ex. 8. Defendants deny that they made these statements to the FBI. The evidence shows, however, that Lynch was on the Web page for a limited number of minutes and there is no evidence of any uploading. Plaintiffs state that the hard drive was deliberately destroyed by the defendants, and had it not been destroyed, it would have shown immediately that no ID or password was used by Mr. Lynch to enter the Web page. This evidence, argues plaintiffs, would have corroborated Mr. Lynch's innocence. Common sense, argues plaintiffs, dictates that there was something wrong with the security system. In fact, the defendants found that "the hacker used a legitimate path to the web server." Def. Index of Evid., Ex. 1, Dep. of James Johnson, 129:21–130:11, and Ex. 4 at 3. The evidence also confirms that Lynch did not use a password or ID to enter the Web page.

Plaintiffs contend that defendants also concealed the Web server log and supplied a misleading paper copy to the FBI, one that was misleading about the time of the incident. The FBI claims it did not later receive an electronic version of the Web server logs, a representation made by the defendants. At the deposition of Mr. Johnson in this case, it turned out that Mr. Johnson did have access to the electronic copy. The defendants stated to the FBI that Mr. Lynch had tried "30 times to gain access" and had "made numerous attempts to break in." Dep. of Reed Simpson, Preliminary Report; Dep. of Johnson, Ex. 8. This evidence was used to show the "criminal intent" required for the criminal prosecution. Further, as mentioned previously herein, plaintiff argues that defendants were told by Sakaris that they needed a minimum of $5,000.00 to bring a federal criminal action. Plaintiffs contend that because it took the technicians less than twenty minutes to rectify the Web page problem, it is not possible that the cost equaled $5,000.00. The remaining alleged damages, according to plaintiffs, were to repair the already defective security system. Plaintiffs argue that this amount was a deliberate attempt to manipulate the loss, so that Mr. Lynch could be criminally prosecuted. The government would have been required to prove this element of the crime. Plaintiffs contend that absent such evidence of the $5,000.00, there was no probable cause in the criminal case.

█ While I agree there is a presumption of probable cause where the grand jury issues an indictment in a criminal case, the presumption can be defeated with a showing of fraud, suppression of the evidence, or conduct during the investigation that is taken in bad faith. *Green v. Montgomery*, 219 F.3d 52, 60 (2nd Cir. 2000).

█ The deposition of James Johnson, January 21, 2004, Def. Ex. 1, offers suffi-cient evidence to support plaintiffs' contentions that material facts exist both as to malicious prosecution as well as to the intentional infliction of emotional distress claim which is hereafter discussed. First, there is a memo indicating that the Omaha World–Herald was fully aware that their security system was woefully deficient. Pl.Ex. 1. Mr. Johnson agrees that he did not give Exhibit 4 to the FBI until some later time. This exhibit indicates that the hacker used a legitimate path to the Web server. *Id.*, 130:12–131:18. Further, Mr. Johnson knew on March 6, 2000, that the plaintiffs had told Mr. Shearer this was an accident. *Id.* at 144:11–15. Mr. Johnson does not recall doing anything to determine if in fact this was an accident. *Id.* at 144:20–145:8. He also knew that during the time the Web page was changed, there had been less than ten hits on the Web page. *Id.* at 151:12–25. He admits that Omaha World–Herald was asked by the FBI to supply and did in fact supply an analysis of the firewall logs and the Omaha World–Herald indicated to the FBI that they had the ability to interpret them. *Id.* at 161:4–20. He also admitted that he had given information about the thirty attempts on the hacking by Mr. Lynch, but as of the day of the deposition, he knew that was not true. He does not remember conveying the latter to Mr. Sakaris. *Id.* at 170:18–171:10;175.

Further, the deposition testimony shows an April 27 exhibit wherein Johnson emails Gottschalk stating that he hopes Lynch admits to hacking and pleads guilty, and he wants precedent with this prosecution. *Id.* at 204:10–205:5, Ex. 14. Also, there was a meeting with the United States Attorney and the Omaha World–Herald on March 13. One can tell that there existed internal disagreement about the need for Internet security in general at the Omaha World–Herald, as there is a statement concerning the preoccupation with company's

computer security. Pl.Ex. 3, Terry Kroeger email. Further, it is unclear from Johnson's deposition how the damage assessment was determined, and what relates to this incident versus that which relates to the general upgrading of an adequate security system for the NPT.

■ Based on the evidence submitted by the parties, I find that a factual issue exists as to whether probable cause existed in this case. If an informant knowingly makes or gives misleading information, or fails to give the prosecutors all the facts, or persuades or induces the officer's decision, that informant can be held liable for malicious prosecution. *Schmidt v. Richman Gordman*, 191 Neb. 345, 215 N.W.2d 105, 109 (1974).

### 2. Malice

■ In order to establish malice, the proceeding must have been brought for a purpose that is wrongful or willful without reasonable or probable cause. *Miles v. Walker*, 66 Neb. 728, 92 N.W. 1014, 1016 (1902); *Tucker v. Cannon*, 32 Neb. 444, 49 N.W. 435 (1891). The Eighth Circuit, applying Missouri law, has stated that to show malice, plaintiffs must show that defendants had an illegitimate motive or acted in flagrant disregard so that a motive can be inferred. *Cassady v. Dillard Dept. Stores*, 167 F.3d 1215 (8th Cir.1999). In an action for malicious prosecution, the question of malice is generally one of fact for the jury, unless the facts are not in dispute. 10 C.J.S. *Malicious Prosecution* § 87. Defendants argue that there is no evidence that they gave false or misleading evidence or failed to give a full and complete statement of the facts as they knew them. The evidence submitted in this regard overlaps with the probable cause claim. In addition, plaintiffs argue that the hard drive of Alice Mora, the NPT employee who found the altered Web page and wherein the Web page was fixed, was

destroyed. Defendants argue that Jim Johnson had a copy of the hard drive made. However, the copy of this hard drive was lost at a later date when the server was changed. Defendants argue that in any event the FBI did not want the copy of the hard drive and that this fact is irrelevant. Plaintiffs contend that it would have immediately shown the lack of use by Mr. Lynch of a password or protected ID.

Plaintiffs also argue that the defendants failed to give the electronic version of the firewall logs and the Web server logs to the FBI. During the criminal action, pursuant to a subpoena, defendants indicated that the electronic copy of the Web server logs did not exist. However, during the civil action, the electronic copy was found. Plaintiffs allege this likewise would have shown in the early stages of the criminal case that he was not a hacker.

Third, as previously discussed, the Lynch's allege that the Omaha World-Herald manufactured its damages estimates. Defendants argue that there is no basis for this argument, particularly since plaintiffs have spent $5,700.00 on a damages expert. It is likely, argues the defendants, that their expert, Mr. Meinders, spent that much time on reviewing the firewall logs, in addition to the work done by others. Further, defendants argue that the law is in a state of flux as to what damages are recoverable. *In Re Intuit Privacy Litigation*, 138 F.Supp.2d 1272, 1280–81 (C.D.Cal.2001) (stating statute regarding damages under Computer Fraud and Abuse Act is not clear); *DoubleClick, Inc. Privacy Litigation*, 154 F.Supp.2d 497, 520 (S.D.N.Y.2001) (loss under Computer Fraud and Abuse Act intended to target remedial damages, not just direct damages).

In summary, plaintiffs argue that defendants actively persuaded or induced the federal investigators to prosecute Mr.

Lynch for a computer hacking felony and provided false and misleading information, destroyed some evidence and withheld exculpatory evidence that the change to the page was accidental. NPT's lack of its own security; the early memo from Gottschalk talking about finding someone to "hang" for this and asking the recipient to shred the email upon receipt; information regarding access of thirty times and numerous attempts to break in provided erroneously and intentionally to FBI; providing the $5,500.00 figure to the FBI for damages, most of which did not relate to the damages in this case; destruction of the hard drive; providing the FBI with a Web server log that reflected an inaccurate period of time; stating that the Web server log did not exist, when in fact it did and may have supported Mr. Lynch's claim that he was innocent; defendants' statements to the FBI that Mr. Lynch tried to upload changes a number of times to the Web page; and the defendants' statement to the FBI that Mr. Lynch had revisited the Web page to view the damage he had created, according to plaintiffs, show at the very least a reckless disregard for the truth in this case. Further, plaintiffs point out that Christopher Meinders was an officer in an organization known as InfraGuard which includes members of the public and private businesses which is led by the FBI and Homeland Security. Part of the mission of InfraGuard appears to be the prevention of terrorist hacking and the promotion of prosecutions. This membership allowed the Omaha World–Herald access to and influence with the FBI.

■ Wanton and reckless conduct may imply malice. *Johnson v. First National Bank and Trust Co.*, 300 N.W.2d at 14; 54 C.J.S. Malicious Prosecution § 42 (1948). I find that the plaintiffs have provided sufficient evidence that, if believed, establishes a right to a jury trial on the issue of malice.

### 3. Legal Causation

■ Defendants argue that there is no legal causation as the decision to prosecute was left to the prosecutor. *Thrift v. Hubbard*, 974 S.W.2d 70, 77 (Tex.App.1998). Plaintiffs argue that the actions and inaction described herein, if true, indicate practices designed to cause the prosecution of Mr. Lynch. I agree that the evidence, if true, is sufficient to submit the issue of causation to the jury.

### B. Intentional Infliction of Emotional Distress

■ In order to prove a cause of action for intentional infliction of emotional distress, the plaintiff must prove: (1) intentional or reckless conduct; (2) that the conduct was so outrageous or extreme to be viewed as totally intolerable; and (3) that the conduct caused the severe emotional distress that one should not be forced to endure. *Iwanski v. Gomes*, 259 Neb. 632, 611 N.W.2d 607, 611 (2000). The conduct must be more than mere worry, anxiety, vexation or anger. *Hassing v. Wortman*, 214 Neb. 154, 333 N.W.2d 765 (1983). Defendants argue that there is no evidence of conduct that is outrageous and no evidence of severe emotional distress. As a matter of policy, argue defendants, reporting potential crimes to law enforcement is favored. Plaintiffs do not argue that reporting a crime constitutes intentional infliction of emotional distress. However, they argue that the actions of the defendants as set forth above, if believed, show a deliberate pattern of actions designed to obtain a criminal conviction by use of fraud, concealment, heavy-handedness and destruction of evidence. Further, plaintiffs argue that they suffered panic, fear, disturbed sleep, embarrassment, humiliation, feelings of powerlessness, change in routines with the children, put off having a third child, took out a

second mortgage to pay the legal bills, and less intimacy with each other. Plaintiffs admit, however, that they did not seek medical or counseling treatments.

The evidence as presented is sufficient to create a question for the jury. If the defendants did as plaintiffs accuse, such evidence would be sufficient as a matter of law to support a claim for intentional infliction of emotional distress. *See Carroccia v. Anderson,* 249 F.Supp.2d 1016, 1028 (N.D.Ill.2003).

*Conclusion*

The evidence as presented by the parties is sufficiently conflicting at this point in the case so as to require denial of the summary judgment motion. In the court's opinion, this is a case that should be settled. If the parties are interested in pursuing settlement negotiations with court assistance, they should contact this office or Magistrate Judge Thomas Thalken.

THEREFORE, IT IS ORDERED:

1. Defendants' motion to supplement evidence index, Filing No. 84, is granted;

2. Defendants' motion for summary judgment, Filing No. 58, is denied.