**Bradford C. WINNIE, Plaintiff,**

v.

**Harold W. CLARKE, et al., Defendants.**

No. 4:CV93–3382.

United States District Court,
D. Nebraska.

June 7, 1995.

Opinion Granting Reconsideration
July 11, 1995.

E. Terry Sibbernsen, Omaha, NE, for plaintiff.

Melanie J. Whittamore–Mantzios, Asst. Atty. Gen., Lincoln, NE, for defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

URBOM, Senior District Judge.

This cause comes before me on the defendants' motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. The plaintiff claims that the defendants denied him his constitutional right to due process and the resultant entitle-

ment to lost wages. The defendants, employees of the Nebraska Department of Correctional Services [hereinafter DCS] or the Nebraska State Penitentiary [hereinafter NSP], claim that they are each entitled to qualified immunity.

## I. FACTUAL BACKGROUND

The plaintiff was an inmate at the NSP during the years 1992 and 1993. On June 16, 1992, the plaintiff was randomly chosen and ordered to submit a urine sample for the purposes of detecting the use of illicit drugs. Although the plaintiff informed the officer in charge that he had urinated as recently as fifteen minutes earlier, the plaintiff was still required to submit a sample. For the next two hours the plaintiff attempted to urinate, but was unsuccessful. Thereafter, pursuant to Administrative Regulation 211.1 [hereinafter AR 211.1] and based upon the plaintiff's failure to produce a urine sample, he was issued a misconduct report.

On June 20, 1992, a principal hearing was held concerning the plaintiff's alleged misconduct. At the principal hearing the plaintiff requested that inmate Mark Anderson represent him at the subsequent disciplinary hearing. The plaintiff also requested that he be allowed to present three witnesses at the disciplinary hearing: Doug Adams, an NSP Psychologist's Assistant; Dan Danaher, an NSP Physician's Assistant; and Juan Gutierrez, the NSP officer who initially requested that the plaintiff submit a urine sample.

The plaintiff's disciplinary hearing was held on June 24, 1992, and was presided over by the institutional disciplinary committee [hereinafter IDC], which initially consisted of the defendants Lynn Wright and Matthew Heckman. Although the hearing was scheduled to begin at 11:15 a.m., the plaintiff's chosen representative failed to appear, and thus the plaintiff was assigned substitute representation and granted a two-hour continuance to prepare. When the disciplinary hearing resumed at 1:40 p.m., the defendant Dallen Johnsen had replaced Defendant Wright as the Chairperson of the IDC. The IDC refused to call either Doug Adams or Dan Danaher as a witness based upon its conclusion that neither person possessed firsthand knowledge of the incident that prompted the plaintiff's misconduct report. An incident report submitted by Doug Adams, however, was considered by the defendants Johnsen and Heckman. The IDC found the plaintiff guilty of drug abuse and ordered that he be placed in disciplinary segregation for seven days.

The plaintiff appealed the IDC's decision to the DCS Appeals Board, which affirmed. Thereafter, the plaintiff appealed the DCS Appeals Board's decision to the Lancaster County District Court. The district court reversed the DCS Appeals Board's decision on July 21, 1993. The next day the plaintiff filed a Step One Grievance with the defendant John Hopkins, Warden at the NSP, requesting that his record be expunged of the misconduct report and that he be reimbursed for lost wages. In a written response, Warden Hopkins explained that the plaintiff's record would be expunged, but that the plaintiff would not receive any lost wages, because the order of the district court did not provide for such, and it was not an NSP policy to pay lost wages. The plaintiff then filed a Step Two Grievance, appealing Warden Hopkins' response. The defendant Karen Shortridge, Assistant Director of the DCS, responded to the plaintiff and stated that she was in agreement with Warden Hopkins.

## II. STANDARD OF REVIEW

■ A motion for summary judgment shall be granted when, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). A genuine issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157,

90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Any doubt as to the existence of any issue of material fact requires the denial of the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15 (citations omitted).

### III. LEGAL DISCUSSION

#### A. Qualified Immunity

Prison officials are entitled to qualified immunity from suit unless (1) the officials' conduct violates a clearly established statutory or constitutional right; (2) the officials knew or should have known the right was clearly established; and (3) the officials knew or should have known their conduct violated that right. *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *Lue v. Moore,* 43 F.3d 1203, 1205 (8th Cir.1994).

#### 1. The Lost Wages

 The plaintiff argues that the defendants Hopkins and Shortridge violated his constitutional rights by refusing to reimburse him for the wages he lost while in disciplinary segregation. The plaintiff does not dispute the fact that there is no constitutional right to prison wages. *Hrbek v. Farrier,* 787 F.2d 414, 416 (8th Cir.1986) (citing *Sigler v. Lowrie,* 404 F.2d 659, 661 (8th Cir.1968), *cert. denied,* 395 U.S. 940, 89 S.Ct. 2010 (1969)). The plaintiff claims, however, that his right to the "payment of back and/or lost wages [is] pursuant to NDCS Operational Memorandum # 113.17.101 [hereinafter OM 113.017.101]." (Pl.'s Am.Civil Rights Compl. at 12, ¶ 45.) [hereinafter Pl.'s Am.Compl.] Furthermore, he states that "he has a legitimate expectation to be paid for work done

[at] NSP Cornhusker Industries," *id.,* pursuant to section 83–183 of the Nebraska Revised Statutes and various DCS and NSP regulations. I find at least two flaws in the plaintiff's argument.

First, the plaintiff does not deny that "the particular provision in OM 113.017.101 that provided that inmates would be paid back wages for days they were suspended on misconduct charges that they were later found innocent of was deleted on December 6, 1988." (Defs.' Br. in Supp. of Mot. for Summ. J. at 17); *see* (filing 43, Ex. 3C). Therefore, in the absence of the aforementioned provision, OM 113.017.101 does not create a protected property interest in lost wages, and the plaintiff may not properly rely upon it to support his contention that he was deprived of an interest protected by due process. *See Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972) (explaining initial inquiry must be whether there has been a deprivation of an interest protected by the Due Process Clause); *Miller v. Lovell,* 14 F.3d 20, 21 (8th Cir.1994).

Second, although the plaintiff may have "a legitimate expectation to be paid *for work done,*" (Pl.'s Am.Compl. at 12, ¶ 45) (emphasis added), the plaintiff, in actuality, is claiming an expectation to be paid for work that he *would have done* had he not been placed in disciplinary segregation. None of the evidence that is before me warrants such an expectation. Therefore, I find that neither the U.S. Constitution, the laws of Nebraska, nor the regulations of the DCS or NSP provides the plaintiff with a protected property interest in lost wages. Accordingly, the defendants Hopkins and Shortridge did not violate a clearly established statutory or constitutional right by refusing to reimburse the plaintiff for his lost wages, and thus they are each entitled to qualified immunity.

#### 2. The Right to Representation

 The plaintiff contends that he was "[d]enied the right to representation during a disciplinary proceeding." (Pl.'s Am.Compl. at 14, ¶ 49(a).) The plaintiff, however, offers insufficient evidence to support the contention. The plaintiff was initially assigned the

legal representative of his choice, and was later assigned substitute legal representation only because the first individual failed to appear. No authority brought to my attention demands that the defendants should have done more. The United States Supreme Court has specifically stated that it is "not prepared to hold that inmates have a right to either retained or appointed counsel in disciplinary proceedings." *Wolff v. McDonnell,* 418 U.S. 539, 570, 94 S.Ct. 2963, 2981, 41 L.Ed.2d 935 (1974). Moreover, the Eighth Circuit has not granted inmates any greater rights than that which the Constitution affords them. *Kulow v. Nix,* 28 F.3d 855, 857 (8th Cir.1994). Accordingly, I find that the plaintiff has failed to show that he had a clearly established statutory or constitutional right to the legal representation of his choice. Moreover, because Defendant Wright's involvement in the instant case is limited to the act of recognizing the substitution of legal representation, I find that he is entitled to qualified immunity.

### 3. The Uncalled Witnesses

In 1992, the plaintiff had a clearly established right to produce witnesses in his defense at a disciplinary hearing. *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979; *Brown–El v. Delo,* 969 F.2d 644, 647 (8th Cir.1992); Neb. Rev.Stat. § 83–4,122(4) (1987); DCS Code 68.6.006.09. Moreover, each of the referenced authorities grants an inmate the right to call a witness "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979. Defendant Johnsen states, however, that to prevent the inmates from abusing the disciplinary process "the IDC developed a practice ... of only allowing the inmates to call witnesses who actually witnessed the alleged misconduct." (filing 43 Ex. 1 at 2, ¶ 4.) Consequently, in the instant case, and contrary to each of the above-cited authorities, the defendants concluded that "[Mr. Danaher] wasn't there so he couldn't be a witness." (Pl.'s Am.Compl. Ex. 14 at 3.) Although the IDC practice of only calling eyewitnesses to testify may reduce the number of unnecessary witnesses to be called, it also appears to violate the U.S. Constitution, the laws of Nebraska, and the regulations of the DCS in the process. I find that the plaintiff has produced sufficient evidence that the defendants Johnsen and Heckman violated his clearly established right to call witnesses and thus present a defense. Moreover, the wealth of authority that memorializes the plaintiff's right coupled with the length of time it has been in existence persuade me that the defendants should have known the right was clearly established and that their conduct violated that right. Accordingly, I find that neither Defendant Johnsen nor Defendant Heckman is entitled to qualified immunity as it relates to causes of action b and c of the plaintiff's amended civil rights complaint.

### 4. The Remaining Claims

The plaintiff also claims that he was denied the right to present documentary evidence and the right to a continuance. (Pl.'s Am.Compl. at 14, ¶ 49(d), (e).) Neither claim can withstand the defendants' motion for summary judgment. It is true that the plaintiff had a clearly established right to present documentary evidence at the disciplinary hearing. *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979; *Brown–El,* 969 F.2d at 647; Neb.Rev.Stat. § 83–4,122(4). The plaintiff, however, fails to submit sufficient evidence to show that he attempted to present documentary evidence and was prevented from doing so. On the contrary, the record reflects that the only documentary evidence in the plaintiff's possession was an incident report written by Doug Adams, and it was submitted and received into evidence. (Pl.'s Am.Compl. at 9, ¶ 25.) Consequently, the plaintiff has failed to show that any of the defendants' actions violated his clearly established right to present documentary evidence.

The plaintiff also fails to submit sufficient evidence to show that he had a clearly established right to a continuance. The only authority submitted for my review that refers to "continuances" is DCS Code § 68.6.006.14. The section states in part: "The chairperson of a Disciplinary Committee *may* grant a continuance of the disciplinary hearing ... only for good cause shown...." (filing 1) (emphasis added). Al-

though the aforementioned section arguably creates a procedural right, the language of the section does not possess the two elements that are necessary for the section to create an interest protected by the Due Process Clause. *See Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) (holding regulations that use "explicitly mandatory language" and "specific substantive predicates" create a protected liberty interest). By using the permissive term "may," the above-quoted language lacks the requisite language "mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 462, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989). Accordingly, I find that the plaintiff has failed to show that he had a clearly established statutory or constitutional right to a continuance.

### B. Eleventh Amendment Immunity

■■■ The Eleventh Amendment to the United States Constitution "bars suits by private parties 'seeking to impose a liability which must be paid from public funds in the state treasury.'" *Nix v. Norman,* 879 F.2d 429, 432 (8th Cir.1989) (quoting *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974)); *see also Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (holding absent consent a state is immune from suits brought in federal court). The Eleventh Amendment also bars recovery of monetary damages from the state or its agents in an action brought under section 1983 of the United States Code. *DeYoung v. Patten,* 898 F.2d 628, 635 (8th Cir.1990). Moreover, "relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963) (per curiam); *see Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985) (holding a suit against a state official in his official capacity is a suit against the official's office).

■■■ A state may waive its Eleventh Amendment immunity from suit, but such a waiver must be explicitly made. *Pennhurst,* 465 U.S. at 99, 104 S.Ct. at 907. The waiver must be stated in "the most express language or by such overwhelming implication from the text as leaves no room for any other construction." *Patteson v. Johnson,* 219 Neb. 852, 856, 367 N.W.2d 123 (1985) (citations omitted), *cert. denied,* 479 U.S. 828, 107 S.Ct. 109, 93 L.Ed.2d 58 (1986). The state of Nebraska, however, has not waived its immunity from liability in civil rights actions. *Wiseman v. Keller,* 218 Neb. 717, 722, 358 N.W.2d 768 (1984).

The plaintiff has neither pleaded nor proved that the state has waived its Eleventh Amendment immunity from liability. Furthermore, because the plaintiff seeks money damages, and "[m]onetary damages are not recoverable against state officials in their official capacities," *DeYoung,* 898 F.2d at 635 (citation omitted), this suit cannot proceed against the defendants in their official capacity and must be dismissed.

**IT IS THEREFORE ORDERED** that:

1. the defendants' motion for summary judgment, filing 42, is granted as it pertains to all the defendants in their official capacity;

2. the defendants' motion for summary judgment, filing 42, is granted as it pertains to Hopkins, Shortridge, and Wright in their personal capacity;

3. the defendants' motion for summary judgment, filing 42, is granted as it pertains to Johnsen and Heckman in their personal capacity with regards to causes of action a, d, and e of the plaintiff's amended civil rights complaint; and

4. the defendants' motion for summary judgment, filing 42, is otherwise denied.

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION

This cause comes before me on the defendants' motion for reconsideration. The defendants claim that a recent United States Supreme Court decision requires that I reconsider the memorandum and order that I issued on June 6, 1995. The plaintiff opposes any reconsideration of the matter. I agree

with the defendants and shall reconsider the defendants' motion for summary judgment in light of *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (U.S.1995).

## I. FACTUAL BACKGROUND

Although the facts are more fully described in my memorandum dated June 6, 1995, a brief review of the most pertinent facts is appropriate. While the plaintiff was an inmate at the Nebraska State Penitentiary [hereinafter NSP] he was randomly chosen and ordered to submit a urine sample for the purposes of detecting the use of illicit drugs. Although the plaintiff informed the officer in charge that he had urinated as recently as fifteen minutes earlier, the plaintiff was still required to submit a sample. The plaintiff repeatedly attempted to urinate, but was unsuccessful. Thereafter, pursuant to an NSP regulation and based upon the plaintiff's failure to produce a urine sample, he was issued a misconduct report.

The plaintiff's disciplinary hearing was held on June 24, 1992, and was presided over by the institutional disciplinary committee. At the time of the plaintiff's alleged deprivation of constitutional rights the committee consisted of the defendants Matthew Heckman and Dallen Johnsen. Although the plaintiff had previously requested that three witnesses be called on his behalf, the aforementioned defendants refused to call two of the witnesses. The committee then found the plaintiff guilty of drug abuse and ordered that he be placed in disciplinary segregation for seven days.

The plaintiff appealed the committee's decision, and ultimately the Lancaster County District Court reversed and ordered that the plaintiff's record be expunged of the misconduct report. On July 11, 1994, the plaintiff filed a complaint alleging that the defendants violated his constitutional right to due process. On June 6, 1995, I issued a memorandum and order in which I found that the plaintiff had a protected liberty interest in being free from disciplinary segregation, and therefore he was entitled to certain proce-

dural safeguards. Furthermore, I found that the plaintiff had a clearly established right to call witnesses at his disciplinary hearing and that the defendants' refusal to do so was not protected under the doctrine of qualified immunity. On June 19, 1995, the United States Supreme Court decided *Sandin* and, in so doing, called into question the propriety of my memorandum and order.

## II. STANDARD OF REVIEW

■■■ The Federal Rules of Civil Procedure do not recognize or provide a motion to reconsider. Courts will generally entertain such a motion, however, by treating it as either a motion to alter or amend a judgment pursuant to Rule 59(e) or a motion for relief from judgment pursuant to Rule 60(b). *Sanders v. Clemco Indus.*, 862 F.2d 161, 168 (8th Cir.1988). In order to satisfy Rule 60(b), the movant must prove the existence of at least one of the six enumerated reasons[1] for relief and must also demonstrate "exceptional circumstances" to warrant such "extraordinary relief." *United States v. Young*, 806 F.2d 805, 806 (8th Cir.1986) (per curiam), *cert. denied*, 484 U.S. 836, 108 S.Ct. 117, 98 L.Ed.2d 76 (1987).

## III. LEGAL DISCUSSION

■■■ Prison officials are entitled to qualified immunity from suit unless (1) the officials' conduct violates a clearly established statutory or constitutional right; (2) the officials knew or should have known the right was clearly established; and (3) the officials knew or should have known their conduct violated that right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *Lue v. Moore*, 43 F.3d 1203, 1205 (8th Cir.1994).

■■■ I premised my memorandum and order dated June 6, 1995, on the belief that the plaintiff had a protected liberty interest in remaining free from disciplinary segregation. *See Benzel v. Gunter*, No. A–90–361, 1992 Neb.App. LEXIS 63, at *11, 1992 WL 132265 (May 26, 1992) (holding Nebraska created a

---

**1.** I find that the defendants' motion is justified by either of the following two reasons: (2) newly discovered evidence which by due diligence could not have been discovered; or (6) any other reason justifying relief from the operation of the judgment. Fed.R.Civ.P. 60(b).

liberty interest in being free from administrative segregation). Consequently, I concluded that the plaintiff was entitled to receive the procedural safeguards enunciated in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), including the right to produce witnesses in his defense at a disciplinary hearing. Furthermore, I concluded that the right was clearly established and that the defendants should have known the right was clearly established and that their conduct violated the right. Accordingly, I found that neither Defendant Johnsen nor Defendant Heckman was entitled to qualified immunity as it related to the plaintiff's second and third causes of action.

In *Sandin* the Supreme Court reviewed a case similar to the instant case in which an inmate went before a disciplinary committee, was prohibited from calling witnesses, and was found guilty and sentenced to disciplinary segregation. In its decision, the Court affirmed that an individual State may under certain circumstances create a liberty interest that is protected by the Due Process Clause. The Court declared, however, that such an interest "will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2293 (citations omitted). The Court held that the plaintiff did not possess a protected liberty interest that would entitle him to the procedural safeguards set out in *Wolff* because the "regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2302.

I shall not attempt to decide whether the plaintiff in the instant case actually possesses a protected liberty interest in being free from disciplinary segregation. For purposes of this memorandum, I simply find that regardless of whether the plaintiff has such a protected liberty interest, his right to call witnesses at the disciplinary hearing is not so clearly established as to presume that the defendants should have known that the plaintiff had such a right and that their actions violated that right.

**IT IS THEREFORE ORDERED** that the defendants' motion for reconsideration, filing 53, is granted. **IT IS FURTHER ORDERED** that the defendants' motion for summary judgment, filing 42, is granted as it pertains to Johnsen and Heckman in their personal capacity with regard to causes of action b and c of the plaintiff's amended civil rights complaint.