Douglas W. STAGEMEYER, individually and as parent and next friend; and Matthew D. Stagemeyer, by and through his parent and next friend, Plaintiffs,

v.

COUNTY OF DAWSON, Nebraska; Kurt R. McBride, individually and in his official capacity as Deputy County Attorney of Dawson County, Nebraska; Elizabeth F. Waterman, individually and in her official capacity as County Attorney of Dawson County, Nebraska; Lt. Gregory L. Vandenberg, individually and in his official capacity as a Lieutenant with the Nebraska State Patrol; Mike Dowling, individually and in his official capacity as a Trooper with the Nebraska State Patrol; Kenneth C. Ayers, individually and in his official capacity as a Trooper with the Nebraska State Patrol; C.T. Phaby, individually and in his official capacity as a Trooper with the Nebraska State Patrol; K. Moody, individually and in his official capacity as a Trooper with the Nebraska State Patrol; D. Covert, individually and in his official capacity as a Trooper with the Nebraska State Patrol; C. Carter, individually and in his official capacity as a Trooper with the Nebraska State Patrol; Capt. Parrish, individually and in his official capacity as a Captain with the Nebraska State Patrol; and Tom Nesbitt, individually and in his official capacity as Superintendent with the Nebraska State Patrol, Defendants.

No. 7:01CV5003.

United States District Court,
D. Nebraska.

March 20, 2002.

John F. Recknor, Randall L. Wertz, Recknor & Associates, Lincoln, NE, for Plaintiff.

Randall L. Goyette, Baylor, Evnen LAw Firm, Lincoln, NE, Melanie J. Whittamore-Mantzios, Atty. General's Office, Lincoln, NE, for Defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

■ Plaintiffs, a former school board president and his son, bring this action for money damages against state police officers and county prosecutors who allegedly violated Plaintiffs' rights under federal and state law when police performed an illegal search and seizure at a New Year's Eve party that led to criminal prosecution, but not conviction, of both plaintiffs. Pending before the court is a motion to dismiss [1] (filing 24) filed by defendants Nesbitt, Vandenberg, Dowling, Ayers, Phaby, Moody, Covert, Carter, and Parrish in their individual and official capacities, who assert failure to state a claim upon which relief may be granted pursuant to Fed. R.Civ.P. 12(b)(6), qualified immunity, and sovereign immunity.[2]

1. Defendants filed a motion (filing 42) requesting that its motion to dismiss—originally filed with reference to Plaintiffs' original complaint—apply to Plaintiffs' amended complaint (filing 41). The court granted Defendants' motion (filing 49).

2. Although Defendants' brief in support of its motion to dismiss refers to portions of an affidavit that was filed with a separate motion to dismiss asserted by defendants Dawson County, McBride, and Waterman (filings 20 & 21), the defendants who have filed the motion to dismiss under consideration have not submitted evidence with their 12(b)(6) motion. Hence, I need not convert the motion into one for summary judgment pursuant to Fed. R.Civ.P. 12(b), and I shall not consider any of the evidence that has been submitted in connection with other motions in resolving the instant motion to dismiss.

## I. THE ALLEGATIONS

### A. The Parties

The plaintiffs' amended complaint (filing 41) alleges that, at relevant times, defendant Vandenberg was a Nebraska State Patrol lieutenant; defendants Dowling, Ayers, Phaby, Moody, Covert, and Carter were Nebraska State Patrol troopers; and defendants Parrish and Nesbitt were a Nebraska State Patrol captain and superintendent, respectively. Plaintiffs allege that the defendants were acting under the "color of law," both individually and in their official capacities, and as "policy makers." (Filing 41 ¶¶ 11–19.) Plaintiff Douglas Stagemeyer was the president of the Eustice–Farnham School Board at the relevant time, and plaintiff Matthew Stagemeyer is Douglas Stagemeyer's son.

### B. The Incident

Plaintiffs allege that on December 31, 1999, they were invited guests at a residence referred to in the complaint as Plum Creek Canyon # 12–C, Dawson County, Nebraska. While Plaintiffs were guests at the Plum Creek property, defendants Vandenberg, Dowling, Ayers, Phaby, Moody, and Covert allegedly entered the property, residence, and buildings at Plum Creek without a search warrant and without the permission of the property owners or the plaintiffs. Plaintiffs allege that such defendants had ample time to obtain a search warrant, yet intentionally refused to do so. Plaintiffs also allege that Defendants "had notice" that Plaintiffs were invitees at the Plum Creek property. (Filing 41 ¶ 22.)

After completing the search, the above-named defendants "seized" the plaintiffs and ordered plaintiff Matthew Stagemeyer to give a breath sample for alcohol analysis, which indicated 0.0 percent alcohol in his system. At that time, neither plaintiff felt "free to leave." (Filing 41 ¶ 23.)

### C. The School Board Meeting

As a result of the above-described search and seizure, a special meeting of the Eustice–Farnham School Board was scheduled for January 5, 2000. Defendants Parrish and Vandenberg attended this meeting, at which time they "unlawfully and untruthfully stated" that juveniles who were present at the Plum Creek property on December 31, 1999, were victims of alcohol poisoning and had been "near death because of extreme consumption of alcohol." (Filing 41 ¶ 27.) As a result of these statements, members of the community demanded that plaintiff Douglas Stagemeyer resign as president of the Eustice–Farnham School Board, which he did.

### D. The Prosecution

As a result of the search and seizure performed by the above-described defendants, defendant Carter authored an investigative memorandum dated January 6, 2000, which falsely stated that Douglas Stagemeyer informed Carter that a juvenile had given false information to law enforcement on December 31, 1999, at Plum Creek Canyon # 12–C. Defendant Carter forwarded this memorandum to defendant Kurt McBride, Deputy County Attorney for Dawson County, Nebraska, and defendant Elizabeth Waterman, County Attorney for Dawson County, who criminally charged Matthew Stagemeyer with one count of minor in possession of alcohol and Douglas Stagemeyer with one count of contributing to the delinquency of a minor.

On July 7, 2000, a Dawson County judge found plaintiff Matthew Stagemeyer not guilty on the criminal charge of minor in possession of alcohol. On April 3, 2000, a Dawson County judge dismissed Douglas Stagemeyer's criminal charges after defendants Waterman and McBride "maliciously" filed an amended complaint charging Douglas Stagemeyer with 19 counts of con-

tributing to the delinquency of a minor in response to Stagemeyer's Request for Bill of Particulars as to the one-count complaint that had originally been filed against him.

Plaintiffs allege that the criminal prosecutions against them were initiated and carried out "with specific intent of malice ... without probable cause...."

### E. Plaintiffs' Claims

Plaintiffs bring five causes of action against the defendants: (1) Violation of Civil Rights—specifically, that Defendants, without probable cause and with malice, violated Plaintiffs' freedom from illegal search, seizure, and detention, as secured by the Fourth, Sixth, and Fourteenth Amendments and by 42 U.S.C. §§ 1983 and 1988; (2) Section 1983 Malicious Prosecution—the defendants caused legal proceedings to be commenced against Plaintiffs with malice and without probable cause; (3) Malicious Prosecution (State Law); (4) Abuse of Process (State Law)—with malice and without probable cause, the defendants misused legal criminal process in prosecuting Plaintiffs under Nebraska criminal law; (5) Oppression Under the Color of Office (State Law)—acting as public servants or peace officers, the defendants willfully injured, deceived, harmed, or oppressed Plaintiffs or attempted to do so.

### II. STANDARDS

#### A. Failure to State a Claim

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), allegations in the complaint must be viewed in the light most favorable to the plaintiffs. *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*

*v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Jackson Sawmill Co., Inc. v. United States*, 580 F.2d 302, 306 (8th Cir.1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979).

#### B. Qualified Immunity

 "Government officials performing discretionary functions are entitled to qualified immunity unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir.1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity is an affirmative defense that will be upheld on a Fed.R.Civ.P. 12(b)(6) motion only when qualified immunity is established on the face of the complaint. *Id.* On a motion to dismiss, the qualified-immunity inquiry is a two-step process, accepting all well pleaded facts in the complaint as true. *Id.*

> The threshold question is whether the plaintiff has alleged the violation of a constitutional right. If plaintiffs meet this standard, we next determine whether that right was clearly established at the time of the alleged violation. A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. In determining whether the legal right at issue is clearly established, this circuit applies a flexible standard, requiring some, but not precise[,] factual correspondence with precedent, and demanding that officials

apply general, well-developed legal principles.

*Id.* (internal quotations and citations omitted).

### C. Sovereign Immunity

■ A suit against a state actor in his official capacity is barred by the Eleventh Amendment unless: (1) the state has unequivocally waived its sovereign immunity and has consented to suit in federal court, or (2) Congress has unequivocally, by legislation, abrogated state immunity in order to effectuate the provisions of the Fourteenth Amendment. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 97–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Burk v. Beene,* 948 F.2d 489, 492–494 (8th Cir.1991).

■ It is well-settled that the State of Nebraska has not waived its immunity from liability in civil rights actions. *Winnie v. Clarke,* 893 F.Supp. 875, 880 (D.Neb.), *reconsideration granted on other grounds,* 893 F.Supp. at 881 (D.Neb.1995); *Wiseman v. Keller,* 218 Neb. 717, 358 N.W.2d 768 (1984) (holding that Neb.Rev. Stat. § 20–148 (Reissue 1977)[3] did not waive Nebraska's sovereign immunity as to actions brought in federal court under 42 U.S.C. § 1983 to protect rights under the Contract Clause of the U.S. Constitution and property interests protected under the Fourteenth Amendment); *Patteson v. Johnson,* 219 Neb. 852, 367 N.W.2d 123 (1985) (same). The Eighth Circuit Court of Appeals has held that Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. § 1983. *Williams v. State of Missouri,* 973 F.2d 599, 600 (8th Cir.1992).

Further, the State of Nebraska has not waived its Eleventh Amendment immunity as to tort claims against it in federal court, and the grant of supplemental jurisdiction contained in 28 U.S.C. § 1367 cannot override Eleventh Amendment immunity. *Pennhurst State School & Hosp.,* 465 U.S. at 121, 104 S.Ct. 900 (claims that state officials violated state law in carrying out official responsibilities is claim against the state protected by Eleventh Amendment; same principle applies to state-law claims brought in federal court under pendent jurisdiction); *Doran By and Through Doran v. Condon,* 983 F.Supp. 886, 890 (D.Neb.1997).

### III. ANALYSIS

### A. First Cause of Action

Plaintiffs first allege that Defendants, acting in their individual and official capacities without probable cause and with malice, violated Plaintiffs' "freedom from illegal searches and seizure of their persons, papers, effects, and dwelling and their rights to freedom from unlawful detention," as secured by the "Fourth, Sixth, and Fourteenth Amendments of the Constitution of the United States, and under the laws of the United States and the State of Nebraska, particularly the Civil Rights Act, Title 42 U.S.C. Section 1983 and 1988." (Filing 41 ¶¶ 42–45.)

■ As a preliminary matter, I shall dismiss Plaintiffs' Sixth Amendment and 42 U.S.C. § 1988 claims against defendants Nesbitt, Vandenberg, Dowling, Ayers, Phaby, Moody, Covert, Carter, and Parrish in their individual and official capacities. Because these defendants' actions occurred before the initiation of ad-

---

**3.** This statute made "persons"—as further defined by statute—liable for injuries caused by subjecting another to "the deprivation of any rights, privileges, or immunities secured by the United States Constitution." *Wiseman v. Keller,* 218 Neb. 717, 358 N.W.2d 768, 771 (1984).

versary judicial criminal proceedings against the plaintiffs, Plaintiffs' Sixth Amendment rights had yet to attach at the time these defendants acted. *Kirby v. Illinois,* 406 U.S. 682, 688–90, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (initiation of judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment—marks commencement of "criminal prosecutions to which alone the explicit guarantees of the Sixth Amendment are applicable"); *Warren v. City of Lincoln,* 864 F.2d 1436, 1442 (8th Cir.) (in § 1983 action, arrestee's Sixth Amendment rights not violated by police officers when such rights had not yet attached because adversary judicial criminal proceedings were not initiated), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989); *Kladis v. Brezek,* 823 F.2d 1014, 1018 (7th Cir.1987) (Sixth Amendment claim unsuccessful in § 1983 action when arrestee's time in custody occurred before the state had committed itself to prosecution). Therefore, Plaintiffs' Sixth Amendment claim against these defendants must fail.

■ Plaintiffs' section 1988 claim must also be dismissed because 42 U.S.C. § 1988 does not create an independent federal cause of action for the violation of federal civil rights. *Moor v. County of Alameda,* 411 U.S. 693, 702–03 & 704 n. 17, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) (collecting cases holding that § 1988 does not independently create federal cause of action for violation of federal civil rights); *Sarmiento v. Texas Bd. of Veterinary Med. Examiners,* 939 F.2d 1242, 1245 n. 4 (5th Cir.1991) (§ 1988 does not create independent federal cause of action, but is essentially procedural statute); *Schroder v. Volcker,* 864 F.2d 97, 99 (10th Cir.1988) (§ 1988 defines procedures pursuant to which remedies may be sought in civil rights actions; it does not create independent cause of action); *McLaughlin v. City of LaGrange,* 662 F.2d 1385, 1388 n. 1 (11th Cir.1981) (same), *cert. denied,* 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982).

■ Remaining in Plaintiffs' First Cause of Action, then, is their section 1983 claim that Defendants, in their official and individual capacities, violated Plaintiffs' rights under the Fourth Amendment, made applicable to the states through the Fourteenth Amendment's due process clause. I shall dismiss the Fourth Amendment claim against the defendants in their official capacities because the claim is barred by the Eleventh Amendment.[4] As stated in section II(C) above, the State of Nebraska has not waived its immunity from liability in civil rights actions, and the Eighth Circuit Court of Appeals has held that Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. § 1983.

■ As to the defendants in their individual capacities, I shall dismiss Plaintiffs' Fourth Amendment claim in part. I shall dismiss the Fourth Amendment claim against defendant Nesbitt in his individual capacity because "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights," *Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir.1990), and Plaintiffs' amended complaint makes no allegation whatsoever that Nesbitt participated, directly or indirectly, in the alleged violations of Plaintiffs' Fourth Amendment rights. *See also McDowell v. Jones,* 990 F.2d 433, 435 (8th Cir.1993) (to hold supervisor liable under § 1983, plaintiff must allege and show per-

---

4. While state agents may be sued in their official capacities if the plaintiff seeks "injunctive or prospective relief for a legally cog-nizable claim," *Nix v. Norman,* 879 F.2d 429, 431 (8th Cir.1989), the plaintiffs in this case seek monetary damages.

sonal participation or direct responsibility for the alleged violations).

■ Plaintiffs' Fourth Amendment claim must also be dismissed against defendants Parrish and Carter, and in part as to defendant Vandenberg, in their individual capacities. Plaintiffs allege that Parrish and Vandenberg attended a special meeting of the Eustice–Farnham School Board on January 5, 2000; unlawfully and untruthfully stated at that meeting that "juveniles present on December 31, 1999, at Plum Creek Canyon # 12–C, Dawson County, Nebraska, were victims of alcohol poisoning and had been near death because of extreme consumption of alcohol"; and as a result of these statements, plaintiff Douglas Stagemeyer was forced to resign as the school board president. (Filing 41 ¶¶ 26–29.) Plaintiffs further allege that defendant Carter authored an investigative memorandum on January 6, 2000, that falsely stated that plaintiff Douglas Stagemeyer informed Carter "that a juvenile had given false information to law enforcement on December 31, 1999, at Plum Creek Canyon # 12C" and that Carter forwarded his memorandum to county prosecutors. (*Id.* ¶¶ 30–33.) Without some indication of a due process violation, Plaintiffs' allegations that Parrish, Vandenberg, and Carter made false reports to local authorities, defamed Plaintiffs, or injured Plaintiffs' reputations do not allege the violation of a clearly established constitutional right. *Brayman v. United States,* 96 F.3d 1061, 1066 (8th Cir.1996). Hence, defendants Parrish and Carter are entitled to qualified immunity as to Plaintiffs' Fourth Amendment claim against them in their individual capacities. Defendant Vandenberg is entitled to similar qualified immunity regarding his participation with Parrish in the special school board meeting.

■ Plaintiffs' Fourth Amendment claim alleges that state patrol officers (1) illegally searched a residence and surrounding buildings in which Plaintiffs were invited guests, and (2) unlawfully "seized" Plaintiffs, during which time the officers performed an alcohol test on plaintiff Matthew Stagemeyer. Plaintiffs further allege that these illegal actions forced Douglas Stagemeyer to resign from the local school board and resulted in criminal prosecution of both Matthew and Douglas Stagemeyer. "A search and/or seizure of evidence which fails to conform to fourth amendment standards may give rise to an action under section 1983." 3 Joseph G. Cook & John L. Sobieski, Jr., *Civil Rights Actions* § 10.04, at 10–33 (2001) (collecting cases). Because Plaintiffs' complaint does not present an insuperable bar to relief against the defendants who participated in the alleged search and seizure, I shall not dismiss the Fourth Amendment claim pursuant to Fed.R.Civ.P. 12(b)(6). Likewise, because qualified immunity is not clearly established on the face of the complaint, I shall also deny the defendants' motion to dismiss the Fourth Amendment claim based on qualified immunity.

To summarize, the Sixth Amendment and 42 U.S.C. § 1988 portions of Plaintiffs' First Cause of Action are dismissed as against all defendants. The remaining portion of Plaintiffs' First Cause of Action—the Fourth Amendment claim—is dismissed against all defendants in their official capacities; is dismissed against defendants Nesbitt, Carter, and Parrish in their individual capacities; and is dismissed against defendant Vandenberg individually as to his statements during the special school board meeting. Remaining for further proceedings is the Fourth Amendment portion of Plaintiffs' First Cause of Action against defendants Vandenberg, Dowling, Ayers, Phaby, Moody, and Covert in their individual capacities for their participation in the search of Plum Creek Canyon # 12–C.

## B. Second Cause of Action

Plaintiffs next bring a claim against Defendants for malicious prosecution under 42 U.S.C. § 1983. "It is well established in this circuit that '[a]n action for malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury.'" *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir.2000) (quoting *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 977 (8th Cir.1993)). *See also Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir.1999) (claim for malicious prosecution not punishable under section 1983 because it does not allege constitutional injury). Hence, this claim must be dismissed against all defendants.

## C. State Law Claims

Once again, as a preliminary matter, I shall dismiss all of Plaintiffs' state-law claims against defendant Nesbitt due to the lack of factual allegations indicating his involvement in any of the incidents at issue in this case.

### 1. Defendants in Official Capacities

Plaintiffs' third, fourth, and fifth causes of actions are ones for malicious prosecution, abuse of process, and "oppression under the color of office" under state law. The State of Nebraska has not waived its Eleventh Amendment immunity as to tort claims against it in federal court, and the grant of supplemental jurisdiction contained in 28 U.S.C. § 1367 cannot override Eleventh Amendment immunity. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (claims that state officials violated state law in carrying out official responsibilities is claim against the state protected by Eleventh Amendment; same principle applies to state-law claims brought in federal court under pendent jurisdiction); *Doran By and Through Doran v. Condon*, 983 F.Supp. 886, 890

(D.Neb.1997). Defendants in their official capacities are therefore immune from suit in federal court with respect to the claims for malicious prosecution and abuse of process. There also does not appear to be any basis for finding a waiver of Eleventh Amendment immunity with respect to the plaintiffs' statutory claim for "oppression under the color of office" that is alleged in Plaintiffs' Fifth Cause of Action. As to these state law claims for money damages, Defendants in their official capacities are entitled to Eleventh Amendment immunity.

### 2. Defendants in Individual Capacities (Malicious Prosecution & Abuse of Process Claims)

#### (i) State Tort Claims Act

Defendants in their individual capacities claim they are immune from Plaintiffs' state-law claims for malicious prosecution and abuse of process because the State Tort Claims Act (Act)—which provides the manner in which tort claims may be brought against the state and its employees—does not apply to any claims "arising out of . . . malicious prosecution [or] abuse of process." Neb.Rev.Stat. Ann. § 81–8,219(4) (Lexis 1999).

While it is true that the state has not waived its immunity as to Plaintiffs' claims for malicious prosecution and abuse of process, the Act does not prohibit Plaintiffs from bringing such claims against Defendants in their individual capacities. The term "tort claim" is defined in the Act as "any claim against an employee of the state for money only on account of . . . personal injury . . . caused by the . . . wrongful act or omission of the employee *while acting within the scope of his or her employment* occurring on or after August 25, 1989." Neb.Rev.Stat. Ann. § 81–8,210(4) (Lexis 1999) (emphasis supplied). This limiting language makes it

clear that tort claims against state employees for their actions or omissions occurring *outside* the scope of their employment are not governed by the Act. In this case, Plaintiffs specifically allege that Defendants acted "beyond the scope of their jurisdiction and without authorization of law." (Filing 41 ¶¶ 55, 62, 66.) Hence, on the face of Plaintiffs' complaint, the Act itself is not a basis upon which to dismiss Plaintiffs' claims for malicious prosecution and abuse of process.

### (ii) Malicious Prosecution

In order to recover on a claim for malicious prosecution, the plaintiffs must establish: "(1) the commencement or prosecution of the proceeding against him or her; (2) its legal causation by the present defendant; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage, conforming to legal standards, resulting to the plaintiff." *Holmes v. Crossroads Joint Venture*, 262 Neb. 98, 629 N.W.2d 511, 525 (2001). "All the above elements must coalesce, and if any of these elements are lacking the result is fatal to the action." *Schmidt v. Richman Gordman, Inc.*, 191 Neb. 345, 215 N.W.2d 105, 109 (1974). Plaintiffs have alleged that the illegal search and seizure, the comments made at the special school board meeting, and the investigative memorandum that was forwarded to county prosecutors—all actions of Defendants—caused Plaintiffs to be maliciously prosecuted without probable cause, resulting in damage to the plaintiffs. Plaintiffs also allege that the criminal prosecutions against them were eventually terminated in their favor. Plaintiffs have properly alleged a malicious-prosecution claim against Defendants.

The fact that some or all of the defendants are not alleged to be the actual prosecutors of the criminal charges against them is immaterial because Nebraska law allows individuals who "give[ ] false or misleading information or otherwise direct[ ] or counsel[ ] officials in such a way so as to actively persuade and induce the officer's decision, then the informant may still be held liable for malicious prosecution." *Holmes*, 629 N.W.2d at 526–27 (mall security officers could be liable for malicious prosecution when they provided false or misleading information to police officers who initiated prosecution).

> It need not be shown that a defendant actively participated in getting the complaint filed or, for that matter, signed the complaint; if the defendant gave information or made complaint to the officers of law in such a manner as that, in the regular and ordinary course of events, a complaint must issue, then this is sufficient to warrant finding the defendant to be the real prosecutor.

*Id.See also Johnson v. First Nat'l Bank & Trust Co.*, 207 Neb. 521, 300 N.W.2d 10, 13–14 (1980) (malicious prosecution action could be brought against bank employees who provided information to police, but insufficient evidence existed to hold them liable); *Schmidt*, 215 N.W.2d at 109–10 (conduct of store security guard in apprehending and detaining plaintiffs, calling police, and making out report which was given to prosecutor sufficient to warrant jury finding that guard was real prosecutor for malicious prosecution purposes).

The issue of whether Defendants acted within the scope of their employment, and are therefore immune from suit under the State Tort Claims Act, and whether Defendants are entitled to qualified immunity cannot be determined from the face of the complaint. Plaintiffs have clearly indicated they are suing Defendants in their individual capacities, and Plaintiffs have stated a valid claim for

malicious prosecution under Nebraska law. Under these circumstances, it is incumbent upon Defendants to plead and prove immunity as an affirmative defense. *See, e.g., Bohl v. Buffalo County*, 251 Neb. 492, 557 N.W.2d 668 (1997) (issue of applicability of Political Subdivisions Tort Claims Act, which was dependent upon whether individual defendant was acting within the scope of his employment, was properly alleged by defendant as an affirmative defense); *Kuchar v. Krings*, 248 Neb. 995, 540 N.W.2d 582 (1995) (same). *See also Sherrod v. State*, 251 Neb. 355, 557 N.W.2d 634, 639 (1997) (holding that exceptions found in section 81–8,219 to the state's general waiver of tort immunity are matters of defense which must be pled and proved by the state). Therefore, I shall deny the individual defendants' motion to dismiss Plaintiffs' malicious prosecution claim.

### *(iii) Abuse of Process*

 The two elements necessary to establish an action for abuse of legal process under Nebraska law are (1) the existence of an ulterior purpose and (2) an act in the use of the process not proper in the regular prosecution of the proceeding. Specifically, Plaintiff must "prove irregular steps taken under cover of the process after its issuance, and damage resulting therefrom." *Gordon v. Community First State Bank*, 255 Neb. 637, 587 N.W.2d 343, 351 (1998) (internal quotation marks and citations omitted), *cert. denied*, 528 U.S. 814, 120 S.Ct. 50, 145 L.Ed.2d 44 (1999). "Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process"; rather, abuse of process means "the perversion of it," as in "accomplishing some illegal object or purpose for which such process was not legally intended." *Id.* (internal quotation marks and citations omitted). The gist of the tort of abuse of process is " 'misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish,' " as compared with the tort of malicious prosecution, which focuses on " 'commencing an action or causing process to issue without justification.' " *Id.* (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 121, at 897 (5th ed.1984)). The "process" in an abuse-of-process claim means judicial, as opposed to administrative, process because the purpose of the tort is to preserve the integrity of the court and the judicial process. *Id.* at 352. *See also Vybiral v. Schildhauer*, 130 Neb. 433, 265 N.W. 241 (1936).

"The purpose for which the process is used, once it is issued, is the only thing of importance." *Prosser and Keeton on the Law of Torts* § 121, at 897. For example, "if the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution; if he prosecutes him with such grounds to extort payment of a debt, it is abuse of process." *Id.* at 89798, 265 N.W. 241. *See also Restatement (Second) of Torts* § 682 & cmts. a, b (1977) ("The gravamen of the misconduct ... is not ... the wrongful initiation of criminal ... proceedings .... The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it."). "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Prosser and Keeton on the Law of Torts* § 121, at 898.

While Plaintiffs clearly allege that Defendants' actions caused the unjustified commencement of criminal proceedings against the plaintiffs—a claim for mali-

cious prosecution—Plaintiffs do not allege the existence of an ulterior purpose on Defendants' part, such as coercion to obtain a collateral advantage, that would not properly be involved in the regular prosecution of criminal proceedings against the plaintiffs. Therefore, I shall dismiss Plaintiffs' claim for abuse of process against defendants Vandenberg, Dowling, Ayers, Phaby, Moody, Covert, Carter, and Parrish individually pursuant to Fed.R.Civ.P. 12(b)(6).

### 3. Defendants in Individual Capacities (Oppression Claim)

██ Plaintiffs' Fifth Cause of Action attempts to allege a violation of Neb.Rev. Stat. Ann. § 28–926 (Michie 1995). This is a criminal statute which provides for treble damages if a public servant or peace officer commits the misdemeanor offense of "oppression under color of office." It is highly questionable whether section 28–926 authorizes a civil cause of action seeking treble damages to be brought under its provisions. *C.f. LaBenz Trucking, Inc. v. Snyder*, 246 Neb. 468, 519 N.W.2d 259, 261–62 (1994) (in case where plaintiffs waived recovery of treble damages and requested only actual damages under section 28–926, court held statute to be "penal in nature" and stated, "A statute which imposes liability for actual damages and additional liability for the same act exacts a penalty. Plaintiffs cite no authority, nor has our research discovered any, to support the proposition that a party may convert a purely penal statute into a remedial one simply as the election of the party.").

I find that in this case, where Plaintiffs have specifically requested treble damages (filing 41 ¶ 68), section 28–926 does not support a civil cause of action.

██ Even if section 28–926 did support a civil cause of action in a case like this, the statute would be unconstitutional to the extent it allowed recovery of treble damages unrelated to actual damages.[5] *See Abel v. Conover*, 170 Neb. 926, 104 N.W.2d 684, 690 (1960) (treble damages provision for deceit by attorney ruled unconstitutional; "The effect of the statute is to authorize the actual compensatory damages to be determined, and then arbitrarily requires the defendant to pay to the plaintiff three times that sum. It therefore exceeds compensatory damages three times over and is a penalty prohibited by . . . Article VII, section 5, of the Constitution of Nebraska.").[6]

Accordingly, Plaintiffs' claim for oppression under color of office will be dismissed in its entirety.

IT IS ORDERED:

1. Defendants' motion to dismiss (filing 24) is denied in part and granted in part, as set forth below:

a. As to Plaintiffs' First Cause of Action (Violation of Civil Rights), the Sixth Amendment and 42 U.S.C. § 1988 portions of Plaintiffs' First Cause of Action are dismissed as against all defendants. The remaining portion of Plaintiffs' First Cause of Action—the Fourth Amendment claim—is dismissed against all defen-

5. Notice that the constitutionality of a state statute has been drawn into question need not be given to the state attorney general since several of the defendants are state employees and are represented by the state attorney general's office. Fed.R.Civ.P. 24(c) ("When the constitutionality of any statute of a State affecting the public interest is drawn in question in any action in which that State or any agency, officer, or employee thereof is not a party, the court shall notify the attorney general of the State as provided in Title 28, U.S.C. § 2403.").

6. I have no occasion to decide whether section 28–926 is unconstitutional to the extent it allows the awarding of treble damages in criminal litigation.

dants in their official capacities; is dismissed against defendants Nesbitt, Carter, and Parrish in their individual capacities; and is dismissed against defendant Vandenberg individually as to his statements during the special school board meeting. Remaining for further proceedings is the Fourth Amendment portion of Plaintiffs' First Cause of Action against defendants Vandenberg, Dowling, Ayers, Phaby, Moody, and Covert in their individual capacities for their participation in the search of Plum Creek Canyon # 12–C.

b. Plaintiffs' Second (Section 1983 Malicious Prosecution), Fourth (Abuse of Process—State Law), and Fifth (Oppression Under the Color of Office—State Law) Causes of Action are dismissed as against defendants Nesbitt, Vandenberg, Dowling, Ayers, Phaby, Moody, Covert, Carter, and Parrish in their official and individual capacities;

c. Plaintiffs' Third (Malicious Prosecution—State Law) Cause of Action is dismissed as against defendants Nesbitt, Vandenberg, Dowling, Ayers, Phaby, Moody, Covert, Carter, and Parrish in their official capacities and is dismissed as against defendant Nesbitt individually, but the motion to dismiss filed by defendants Vandenberg, Dowling, Ayers, Phaby, Moody, Covert, Carter, and Parrish in their individual capacities shall be denied as to the Third Cause of Action;

2. Remaining for resolution are the following claims against the following defendants: (1) the Fourth Amendment portion of Plaintiffs' First Cause of Action against defendants Vandenberg, Dowling, Ayers, Phaby, Moody, and Covert in their individual capacities for their participation in the search of Plum Creek Canyon # 12–C; and (2) Plaintiffs' Third Cause of Action (Malicious Prosecution—State Law) against defendants Vandenberg, Dowling,

Ayers, Phaby, Moody, Covert, Carter, and Parrish in their individual capacities;

3. Because all claims have been dismissed against defendant Nesbitt in his individual and official capacities, defendant Nesbitt is no longer a party in this case.